UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| Isma McGhee, |
| **Petitioner,** |
| -against- |
| Superintendent Donald Uhler,[1] |
| **Respondent.** |

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/18/2019__

**17-cv-01103 (CM) (SDA)**

**REPORT AND RECOMMENDATION**

USDC SDNY
DOCUMENT
ELECTRONICALLY F...
...#:
FILED: __8/16/19__

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE COLLEEN MCMAHON, UNITED STATES DISTRICT JUDGE:**

**INTRODUCTION**

Petitioner Isma McGhee ("McGhee" or "Petitioner"), currently incarcerated at Riverview

Correctional Facility in New York State, seeks a writ of habeas corpus as authorized by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. A New York

County jury convicted McGhee of ten counts of Criminal Sales of a Controlled Substance in the

Third Degree. He was sentenced to an aggregate prison term of twelve years, to be followed by

three years of post-release supervision. McGhee challenges his conviction on three grounds: (1)

the trial court violated his rights to due process and confrontation by precluding him from cross-

examining the lead detective about his involvement in prior false arrests that were the subject of

federal lawsuits; (2) a pretrial photo array used to identify him was "unduly suggestive;" and (3)

**MEMO ENDORSED**

---

[1] At the time that this action was commenced, in February 2017, McGhee was confined at the Upstate
Correctional Facility, and Plaintiff listed Respondent, Donald Uhler ("Respondent"), as the then-authorized
person having custody of McGhee. (*See* Pet., ECF No. 1, at 1.) However, McGhee currently is incarcerated
at Riverview Correctional Facility.

8/12/2019
The court has reviewed Petitioner's objections to the Report
and concludes that they have no merit. I adopt the
Report as the opinion of the court and recommend that the
Petition be denied and the case dismissed. No certificate of
appealability shall issue. I certify that an appeal would not
be taken in good faith.

he "was incorrectly sentenced" as a second felony drug offender previously convicted of a violent

felony. (Pet. for a Writ of Habeas Corpus ("Pet."), ECF No. 1, at 5-9.)

On September 29, 2017, Respondent filed his opposition to the Amended Petition. (Resp.

Mem., ECF No. 16-1.) Petitioner filed his reply memorandum on November 6, 2017. (Reply, ECF

No. 20.)

For the reasons set forth below, I recommend that the Petition be DENIED in its entirety.

## BACKGROUND

### I.    Facts Giving Rise To Petitioner's Conviction

In January 2011, detectives from the Manhattan North Narcotics Command commenced.

a long-term investigation into drug trafficking at the Abraham Lincoln Houses development in

Manhattan ("Lincoln Houses"). (Resp. Mem. at 5; Trial Tr., ECF Nos. 16-10 & 16-11 (hereinafter

"Tr."), at 4, 9.) Among the targets of the investigation were McGhee and his brother, Bobby Lane

("Lane"), who were targeted for selling crack cocaine. (Tr. 9-11.) Detective Arnoldo Rivera was

the primary detective who was responsible for coordinating the investigation and handling the

paperwork, among other responsibilities. (Tr. 3-4, 9, 14, 43-46.) Multiple undercover detectives

were employed in the investigation, both as purchasers and "ghosts," whose responsibility was

to stay close to the purchasing undercover detectives and communicate with supervisors and the

field team. (Tr. 16-17, 89, 118.) Undercover detectives known as UC 76, UC 90, UC 93 and UC 219

acted as purchasing undercovers for the investigation of McGhee and Lane.[2] (Tr. 15, 89, 116-17,

326, 376-77, 417.)

---

[2] A fifth detective, UC 213, also acted as a purchaser during the investigation, but subsequently was

2

During the course of the investigation, the undercover detectives purchased crack cocaine from McGhee on six separate occasions between November 2011 and March 2012. On November 18, 2011, UC 76 and UC 90 were walking on 132nd Street near Madison Avenue when they saw McGhee and told him they "were looking to buy dimes" – or $10 bags – of crack cocaine. (Tr. 120-22, 124, 129, 189-91, 378-80, 402-03.) McGhee agreed, and UC 76 and UC 90 followed him inside 2101 Madison Avenue, a nearby building that is part of the Lincoln Houses. (Tr. 92, 121-22, 126-27, 129, 378, 381.) Inside the lobby, UC 90 told McGhee that he wanted two dimes of crack cocaine and handed McGhee $20. (Tr. 122.) In return, McGee gave UC 90 two orange Ziploc bags of crack cocaine, which he took from "a big clear Ziploc bag." (Tr. 122-23, 127.) UC 76 then purchased three Ziploc bags of crack cocaine for $25. (Tr.122-23, 379-81.) McGhee told UC 90 and UC 76 that his name was "Shorty." (Tr. 128, 187, 387.) After the transactions, UC 90 and UC 76 notified the field team of the positive buys. (Tr. 127, 383.)

On February 1, 2012, UC 90 and UC 213 made two purchases of crack cocaine from McGhee and Lane. (Tr. 130-31.) UC 90 and UC 213 approached Lane in front of 1980 Park Avenue and asked whether "Shorty" was around. (Tr. 22-24, 131-32, 134.) Lane led them inside the building to the tenth floor and called McGhee. (Tr. 132.) McGhee appeared and UC 90 and UC 213 each asked him for two dimes of crack. (Tr. 132-33.) McGhee called someone and stated, "times two." (Tr. 133 .) Lane returned, took $20 from each purchaser and handed each two "little twist[s]" of crack cocaine. (Tr. 133-34, 140-41, 251-55.) McGhee and Lane each gave UC 90 different phone numbers to use to contact them for future transactions. (Tr. 141-42.) Following the transaction, UC 90 notified the field team that there had been a positive buy from two male

reassigned to administrative duties. (Tr. 15-16, 60-62, 131.)

3

sellers, whom she described. (Tr. 136.) Among other things, she described Lane as "missing an eye," and described McGhee as "cross-eyed." (Tr. 137, 192-94.)

On March 9, 2012, UC 90 called McGhee and said that she wanted to purchase more drugs. (Tr. 143-44, 304-05, 388-90.) McGhee arranged to meet her in front of 2101 Madison Avenue. (Tr. 144.) UC 90 and UC 76 met McGhee at that location, and he took them inside near the staircase in the lobby. (Tr. 145, 203-04, 389.) UC 90 handed McGhee $40 in prerecorded buy money, in return for which McGhee handed UC 90 four black Ziploc bags containing crack cocaine. (Tr. 145-46, 149-50, 267-69.) UC 76 purchased three additional dime bags of crack cocaine from McGhee.[3] (Tr. 391, 260-63.)

On March 13, 2012, UC 90 again called McGhee and told him that she was looking to buy crack cocaine. (Tr. 150-52, 305-06.) UC 90 and UC 93 met McGhee in front of 1980 Park Avenue and McGhee led them into the building, where he sold each detective four Ziploc bags containing crack cocaine. (Tr. 151-54, 270-72, 285-87, 418-20.)

On March 28, 2012, UC 90 called McGhee to arrange additional drug purchases. (Tr. 156, 306-07, 328-29, 341.) UC 90 and UC 219 met McGhee in front of 2101 Madison Avenue and then followed McGhee into the building. (Tr. 156, 328, 330.) UC 90 purchased five Ziploc bags of crack cocaine from McGhee and UC 219 purchased two bags. (Tr. 156-60; 224-29, 244-45, 328-31.)

On March 30, 2012, UC 90 was acting as a ghost for another undercover detective (targeting a different seller at the Lincoln Houses) when she bumped into McGhee. (Tr. 164-66, 183.) McGhee asked what she was doing there, and UC 90 responded that she was talking to

---

[3] Although UC 90 testified that UC 76 bought two dime bags (Tr. 147-48), UC 76 testified that that he bought three. (Tr. 391.)

4

friends from the neighborhood. (Tr. 165, 167.) Feeling like she had no choice, UC 90 arranged

another drug purchase from McGhee, who told her to go in 2140 Madison Avenue, another

building in the Lincoln Houses. (Tr. 164-65, 167.) Inside the lobby, UC 90 purchased three bags of

crack cocaine for $20. (T165, 169-72, 279-81.) After the transaction, UC 90 notified the field team

about her buy from McGhee. (Tr. 170-71.)

On May 8, 2012, Detective Rivera conducted a photo array identification for UC 93 to

identify the person who sold her the drugs on March 13, 2012 and she identified McGhee.[4] (Hr'g

13-15, 21, 25-26.) On May 11, 2012, McGhee was indicted by a New York grand jury on ten counts

of criminal sale of a controlled substance in the third degree. (Indictment, ECF No. 16-3, at SR

187.)

On May 16, 2012, Detective Rivera and two members of the field team arrested McGhee

as part of the "take down" in which the police arrested all those from whom they had purchased

drugs during their investigation at the Lincoln Houses. (Tr. 40-41.)

## II.   Relevant State Court Proceedings

### A.   *Wade* Hearing[5]

Prior to trial, McGhee filed an omnibus motion for, among other things, a *Wade* hearing

to seek suppression of the four photographic identifications made by the purchasing undercover

detectives. (Not. of Motion, dated Aug. 21, 2012, ECF No. 16-4, at SR 364; *see also* People's

---

[4] McGhee also was identified by four other witnesses on three prior occasions. (People's Voluntary Disclosure Form, ECF No. 16-3, at SR 213-14.)

[5] A *Wade* Hearing is a pretrial hearing for the purpose of determining "whether a pretrial identification of the defendant violated [a] defendant's constitutional rights and, if so, what the remedy should be." *People v. Boyer*, 6 N.Y.3d 427, 434, 846 N.E.2d 461, 465 (2006) (citing *United States v. Wade*, 388 U.S. 218, 242, (1967)).

5

Voluntary Disclosure Form, ECF No. 16-3, at SR 213-14.) As relevant here, McGhee argued that the photo array identification made by UC 93 on May 8, 2012, should be suppressed because it was suggestive. (Traub Aff., ECF No. 16-4, at SR 367.)

Justice Edward McLaughlin granted McGhee's motion for a *Wade* hearing with respect to the photo array identification only. (Decision, dated Sept. 11, 2012, ECF No. 16-4, at SR 382.) The *Wade* hearing was held before Justice Patricia Nunez on November 20, 2012. (Wade Hr'g Tr. ("Hr'g Tr."), ECF No. 16-10, at 1-31.) Detective Rivera was the only witness to testify at the hearing. (*Id.*)

Detective Rivera testified regarding the investigation at the Lincoln Houses and the March 13, 2012 sales, which were the only sales involving McGhee for which UC 93 was present. (Hr'g Tr. 9-12.) Detective Rivera personally was not present for the sales and his testimony regarding the March 13, 2012 sales was based on what UC 90 and UC 93 had told him. (Hr'g Tr. 11.) However, he testified that he had been to the building where the sales occurred (1980 Park Avenue) on several occasions and was familiar with the lighting conditions in the lobby. (Hr'g Tr. 11-12.) He testified that there were "plenty" of light fixtures "in the hallways, the elevator and the lobby area" and that "natural light" came through the windows and that it was still daylight at the time of the purchases. (Hr'g Tr. 12.) Detective Rivera further testified that, following the March 13, 2012 transactions, UC 90 and UC 93 both informed him that they had purchased drugs that day, and both referred to McGhee by his nickname, "Shorty." (Hr'g Tr. 19-21.) UC 93 also described the seller as a short, black male with "one eye that's kind of off." (Hr'g Tr. 20.)

Detective Rivera explained that the May 8, 2012 photo array consisted of six photos, including one of McGhee. (Hr'g Tr. 13; *see also* Photo Array, ECF No. 16-9, at SR 1324.) Detective

6

Rivera testified that he generated the array by using the "Photo Manager" system. (Hr'g Tr. 22.) Detective Rivera explained that he "had a very good idea" that the person described by UC 93 was McGhee. (Hr'g Tr. 23.) Thus, he input McGhee's NYSID number into the Photo Manager system and the system automatically generated photos of individuals with matching physical characteristics. (*Id.*) Rivera testified that he was aware that McGhee had an issue that affected the appearance of one of his eyes. (Hr'g Tr. 24.) However, the Photo Manager system did not allow him to search based on that criteria. (*Id.*) Instead, Rivera "scrolled through pages of photos," and picked the ones "that look[ed] most fair." (Hr'g Tr. 24-25.) When Rivera showed UC 93 the photo array, he told her to "view it carefully" and tell him if she recognized anyone. (Hr'g Tr. 25.) After viewing the array for about one minute, UC 93 identified the photo of McGhee as "Shorty." (Hr'g Tr. 14, 25-26.)

Justice Nunez found Detective Rivera credible and denied the suppression motion. (Hr'g Tr. 29-30.) The court noted that the photos in the array were "similar in nature," and that all the individuals pictured were similar "in size, facial shapes, close-cropped hair, [and] facial hair." (Hr'g Tr. 30.) While there were variations in "[s]kin tone," the court stated that nothing about those variations stood out. (*Id.*) The court recognized that, because of the condition of one of Petitioner's eyes, "the photo of the petitioner shows him not looking into the camera while all the others are looking into the camera." (Hr'g Tr. 30.) The court commented, however, that the difference was not "that noticeable when you first look at the photo array." (*Id.*) The court stated, the overall impression left by the faces of those in the photo array was that the subjects were "similar in appearance." (*Id.*) Accordingly, the court determined that the photo array was "fairly constituted" and not "unduly suggestive." (*Id.*)

7

**B.     Pretrial Proceedings Regarding Cross-Examination Of Detective Rivera**

During pretrial proceedings on November 26, 2012, defense counsel alerted the court that he intended to question Detective Rivera regarding "prior bad or immoral acts" based on federal false arrest lawsuits in which Detective Rivera had been named as a defendant. (11/26/2012 Tr., ECF No. 16-10, at 196.) Defense counsel argued that the existence of the lawsuits gave him a good faith basis to ask whether or not Detective Rivera had participated in some of the alleged bad acts, and that such questions went to "the heart of the defense[,]" namely that McGhee was falsely arrested. (*Id.* at 196-97.) The court denied counsel's request, finding that there was a good faith basis to ask the questions, but that such inquiry was irrelevant to the case. (*Id.* at 198-99.) Defense counsel argued that he should be able to confront Detective Rivera about prior bad acts in order to call into question his credibility and actions as a police officer, but the court reiterated its decision to deny questions regarding the federal lawsuits. (*Id.* at 199-201.)

**C.     Trial**

Commencing on November 26, 2012, McGhee was tried by jury before Justice Nunez. All four of the undercover detectives who had acted as purchasing undercovers for the investigation of McGhee and Lane —UC 90, UC 219, UC 76 and UC 93— testified about their purchases of crack cocaine from McGhee and made in-court identifications of him as the seller. UC 90 testified that she was "very certain" that McGhee was the man who sold her crack cocaine on November 18, 2011 (Tr. 129-30); was "one hundred percent sure" that McGhee was one of the sellers on February 1, 2012 (Tr. 143); was "[v]ery certain" and had "[n]o doubt" that McGhee sold her the crack cocaine she purchased on March 9, March 13 and March 28, 2012 (Tr. 150, 154-55, 160);

and was "[v]ery sure" that McGhee sold her the drugs she purchased on March 30, 2012. (Tr. 170). UC 219 was "[a] hundred percent certain" that McGhee was the seller from whom he purchased crack cocaine on March 28, 2012. (Tr. 334.) UC 76 was "[a] hundred percent certain" that McGhee was the person who sold him crack cocaine on November 18, 2011 and March 9, 2012. (Tr. 395.) UC 93 was "[a] hundred percent positive" that McGhee was the man who sold her cocaine on March 13, 2012. (Tr. 423-24.) McGhee presented no evidence during the trial.

### D.  Jury Verdict And Sentencing

On December 3, 2012, the jury convicted McGhee of ten counts of third-degree criminal sale of a controlled substance. (Tr. 528-34.) On January 3, 2013, McGhee was sentenced, as a second felony drug offender previously convicted of a violent felony offense, to concurrent, determinate prison terms of 12 years for each count, to be followed by three years of post-release supervision. (Sentencing Tr., ECF No. 16-11, at 3, 14.)

### E.  Direct Appeal

McGhee appealed his conviction and sentence to the Appellate Division, First Department, arguing that: (1) the trial court deprived him of his constitutional rights to confrontation and due process when it ruled: (a) that he could not cross-examine Detective Rivera about the facts underlying three federal false arrest lawsuits in which Detective Rivera had been named as a defendant, and (b) that McGhee's impeachment of Detective Rivera regarding a discrepancy in a document he prepared opened the door to evidence of Detective Rivera's knowledge of Petitioner's involvement in two uncharged drug sales that were part of the same investigation; (2) the court should have suppressed UC 93's identification of McGhee at the *Wade* hearing as the fruit of an unduly suggestive photo identification procedure; (3) McGhee was

9

unlawfully sentenced as a second felony drug offender previously convicted of a violent felony offense because, although the crime for which he previously had been convicted – third-degree criminal possession of a weapon – was listed as a violent felony offense at the time he was convicted of that offense, it was not listed as a violent felony offense when the enhanced sentence was imposed; and (4) his sentence was excessive. (Pet'r Br., ECF No. 16-3, at SR 1-73.)

The Appellate Division unanimously affirmed McGhee's conviction. *See People v. McGhee*, 125 A.D.3d 537, 537, 4 N.Y.S.3d 186, 188 (1st Dep't 2015), *aff'd sub nom. People v. Smith*, 27 N.Y.3d 652, 36 N.Y.S.3d 861 (2016). As for the first ground, the Appellate Division held that the trial court "properly exercised its discretion in denying [McGhee's] request to question [Detective Rivera] regarding certain federal lawsuits in which [he] was one of the named defendants, and the [trial] court's ruling did not deprive [McGhee] of his right to confront witnesses and present a defense." *McGhee*, 125 A.D.3d at 537. The Appellate Division emphasized that McGhee had not "specif[ied] any factual allegations supporting the assertion that [Detective Rivera] had participated in false arrests" and, in any event, any error was harmless because "the People's case rested primarily on the credibility and reliability of the testimony of the undercover officers who made the charged drug purchases, not on that of [Detective Rivera]." *Id.*

Further, the Appellate Division held that the trial court did not err in ruling that McGhee had opened the door to evidence of Detective Rivera's knowledge of McGhee's involvement in prior drug sales, because the evidence of Detective Rivera's knowledge of the prior sales "tended to dispel a misleading impression that [a] discrepancy" in Detective Rivera's paperwork "reflected the actual state of the detective's knowledge, as opposed to being a paperwork error." *Id.* Moreover, the court reasoned that, since the evidence was not offered for its truth, but as

10

evidence of Detective Rivera's state of mind, McGhee's hearsay and Confrontation Clause arguments were unavailing. *Id.* In addition, the court found that the evidence was not unduly prejudicial under the circumstances of the case. *Id.*

With respect to the suppression ruling, the Appellate Division held that the record "support[ed] the [trial] court's finding that the photo array was not unduly suggestive, since [McGhee] and the other participants were reasonably similar in appearance." *Id.* The court found that the "difference between [McGhee]'s photo and the other photos was not sufficient to create a substantial likelihood that [McGhee] would be singled out for identification." *Id.*

Finally, the Appellate Division held that "[t]he sentencing court properly adjudicated [McGhee] [as] a second felony drug offender whose prior felony conviction was a violent felony, because his "conviction of criminal possession of a weapon in the third degree qualifie[d] as a violent felony." *Id.* The court further held that it "perceive[d] no basis for reducing the sentence." *Id.*

McGhee was granted leave to appeal to the New York Court of Appeals (Order, dated Sept. 4, 2015, ECF No. 16-4, at SR 245) and filed his appeal on December 30, 2015, raising the same three points that he had raised before the Appellate Division. (Pet'r Br., ECF No. 16-4, at SR 246-326.) The Court of Appeals affirmed. *See People v. Smith*, 27 N.Y.3d 652, 36 N.Y.S.3d 861 (2016). However, as to the first ground, the Court of Appeals found that, "[c]ontrary to the Appellate Division's conclusion, defense counsel had a good faith basis to ask Detective Rivera about the prior false arrests based upon the specific allegations of the federal lawsuit," and therefore the trial court "abused its discretion in prohibiting this proper line of questioning." *Id.*

11

at 669-70. Nevertheless, the court concluded that the error was harmless. *See id*. at 670. The

court reasoned:

> Overwhelming proof of guilt was provided by the identification testimony of the four different undercover officers who collectively transacted all 10 of the charged sales. Detective Rivera merely supervised the undercover officers and gave an overview of the long-term investigation into [McGhee's] drug dealing. Furthermore, there was no significant probability that the jury would have acquitted [McGhee] had he been permitted to cross-examine Rivera about prior false arrests.

*Id*.

With respect to the photo array, the court found that there was "record support for the

suppression court's determination of mixed law and fact that the photo array was not unduly

suggestive and was fairly constituted." *Id*. Finally, with respect to McGhee's claim regarding his

sentence, the court observed that "not only was third-degree weapon possession under former

Penal Law § 265.02(4) classified as a violent felony when [McGhee] incurred that conviction, but

the same crime was later reclassified as the more serious offense of criminal possession of a

weapon in the second degree (*see* Penal Law§ 265.03[3]), and was listed as a violent felony

offense when [McGhee] was sentenced in this case." *Id*. Thus, the court affirmed the order of the

Appellate Division. *Id.*

On August 22, 2016, McGhee moved to reargue his appeal before the Court of Appeals

on the ground that the court erroneously had applied the non-constitutional standard for

harmless error to his cross-examination claim instead of the standard applicable to a

constitutional error. (Mem. L. In Support Mot. Reargue, ECF No. 16-8, at SR 1297-1307.) The state

opposed the motion, arguing that the court had applied the correct standard because the court's

ruling that the trial court had "abused its discretion" in limiting McGhee's cross-examination of

12

Detective Rivera was a state law determination and not a finding of constitutional error. (Mem. L. In Opp., ECF No. 16-9, at SR 1313-22.) On December 15, 2016, the Court of Appeals denied McGhee's motion in a one sentence Order. (Order, ECF No. 16-9, at SR 1323.)

**F.      Habeas Petition**

On February 10, 2017, McGhee filed the instant Petition before this Court. (Pet., ECF No. 1.) In his Petition, McGhee raises the same three claims that he raised before the state courts: (1) the trial court violated his rights to due process and confrontation by precluding him from cross-examining Detective Rivera about the facts underlying certain false arrest lawsuits (Ground One); (2) the photo array from which UC 93 identified him prior to trial was unduly suggestive (Ground Two); and (3) he was incorrectly sentenced as a second felony drug offender whose prior conviction was a violent felony (Ground Three). (Pet. at 6-9.)

## DISCUSSION

**I.      AEDPA Legal Standards**

Section 2254(d) provides, in relevant part, that a court may grant a writ of habeas corpus on a claim that has been previously adjudicated on the merits by a state court only if the state court adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d).

A claim is considered "adjudicated on the merits" when it is decided based on the substance of the claim advanced, rather than on a procedural, or other, ground. *See Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001). Further, "[w]hen a state court rejects a federal claim

without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

Under AEDPA, federal courts reviewing habeas petitions must accord substantial deference to state court decisions. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). A state court decision is "contrary to" clearly established federal law where the state court either applies a rule that "contradicts the governing law" set forth in Supreme Court precedent or "confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision," and arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law pursuant to this provision occurs when the state court identifies the correct governing legal principle, but unreasonably applies that principle to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003).

In addition, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted).

14

## II. McGhee's Claims Based Upon Limitations Of His Cross-Examination Of Detective Rivera Should Be Denied (Ground One)

As set forth above, McGhee asserts that the trial court violated his rights to due process and confrontation by precluding him from cross-examining Detective Rivera about his involvement in three false arrests that were the subject of federal lawsuits.[6] (Pet. at 6.) McGhee contends that the Court of Appeals' rejection of his due process and confrontation claims based upon the harmless error doctrine was contrary to, or an unreasonable application of, clearly established Supreme Court law.[7] (Reply at 6-9.)

As an initial matter, the parties disagree about the basis for the Court of Appeals' decision. McGhee's argument—that the Court of Appeals' finding of harmless error was contrary to federal law because it applied the harmless error standard for non-constitutional errors as opposed to the harmless error standard for constitutional errors—is premised on the conclusion that the Court of Appeals found that the exclusion of cross-examination regarding the false arrest lawsuits violated McGhee's rights under the Sixth Amendment. In contrast, Respondent argues that the Court of Appeals' determination that the trial court abused its discretion in limiting the cross examination was directed to McGhee's state law claim and did not directly address a constitutional issue. (Opp. at 18-19.) Respondent argues that the Court of Appeals' rejection of

---

[6] Petitioner asks this Court also to consider five additional lawsuits in which Detective Rivera was named as a defendant. (See Letter, dated Jan. 18, 2018, ECF No. 21.) However, the fact that there may be additional cases in which Detective Rivera was named as a defendant does not change the Court's analysis, which is limited to whether the state court unreasonably applied clearly established federal law.

[7] While McGhee frames his claim as alleging a violation of his right to due process as well as his right to confrontation, they are "plainly intertwined, and other courts faced with similarly related claims have generally considered them together." Brown v. Breslin, No. 04-CV-07970 (PAC) (DF), 2008 WL 857767, at *11 (S.D.N.Y. Mar. 31, 2008) (collecting cases). As McGhee makes no separate arguments as to his due process claim, the Court will follow this approach here.

15

McGhee's confrontation claim was not contrary to, or an unreasonable application of, clearly established federal law.

"The Sixth Amendment's confrontation right, which applies equally to defendants in state prosecutions, 'means more than being allowed to confront the witness physically[,]' [and] includes a right of cross-examination, which provides 'the principle means by which the believability of a witness and the truth of his testimony are tested.'" *Nappi v. Yelich*, 793 F.3d 246, 250 (2d Cir. 2015) (quoting *Davis v. Alaska*, 415 U.S. 308, 315, 316 (1974)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (explaining Confrontation Clause right is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination"). "The Confrontation Clause does not, however, guarantee unfettered cross-examination." *Alvarez v. Ercole*, 763 F.3d 223, 230 (2d Cir. 2014) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam)). "The trial court has broad discretion . . . to impose reasonable limits on . . . cross examination based on concerns about . . . harassment, prejudice, confusion of the issues, . . . or interrogation that is repetitive or only marginally relevant." *Id.* (internal citation and quotation marks omitted); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

"Combining the standard for restricting cross-examination with the AEDPA standard, in order to grant a habeas petition we would have to conclude not only that the trial court abused its 'broad discretion' by precluding cross-examination . . . but also that the state appellate court could not reasonably have determined that the evidence would have been excludable had the trial court properly applied standard rules of evidence[.]" *Alvarez,* 763 F.3d at 230 (citing *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011)); *see also Watson*, 640 F.3d at 511 ("On habeas corpus,

16

. . . we do not sit to review the trial judge's exercise of discretion, but rather to assess whether the state court's denial of [the defendant's] Confrontation Clause claim was reasonable."). Moreover, for habeas to be warranted, the trial court's denial must not have been harmless.

In deciding federal habeas claims by state prisoners, because of the deference afforded to state courts, a federal habeas court will "find an error harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." *Corby v. Artus*, 699 F.3d 159, 169 (2d Cir. 2012) (quoting *Fry v. Pliler*, 551 U.S. 112, 116 (2007)); *see also Alvarez*, 763 F.3d at 229-30 ("[F]or habeas to be warranted, the trial court's denial . . . must have had a 'substantial and injurious effect or influence in determining the jury's verdict.'") (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)); *Wood v. Ercole*, 644 F.3d 83, 93-94 (2d Cir. 2011).

Here, regardless of whether the Court of Appeals rejected McGhee's Confrontation Clause claim on the merits or based on harmless error analysis, McGhee would have to show that any error was not harmless under the standard applicable on federal habeas review. *See, e.g.*, *Rosado v. Unger*, No. 11-CV-03747 (KBF) (THK), 2012 WL 5871607, at *13 (S.D.N.Y. May 4, 2012), *report and recommendation adopted*, 2012 WL 5871606 (S.D.N.Y. Nov. 20, 2012) ("[E]ven if the trial court's restriction of cross-examination was contrary to or resulted from unreasonable application of federal law, Confrontation Clause errors are subject to harmless error analysis on habeas review.") (citing *Benn v. Greiner,* 402 F.3d 100, 105-06 (2d Cir.2005)). Thus, even if the Court of Appeals had applied the higher standard for constitutional error, *see People v. Crimmins*, 36 N.Y.2d 230, 237 (1975) (setting forth test for harmless constitutional error as no reasonable possibility that the error might have contributed to defendant's conviction) (citing *Chapman v. California*, 386 U.S. 18 (1967)), this Court's review would be limited to whether the trial error

17

resulted in "actual prejudice." *Davis v. Ayala*, 135 S. Ct. 2187, 2197 (2015) (citing *Brecht*, 507 U.S. at 637). Under this test, "[t]here must be more than a 'reasonable possibility' that the error was harmful." *Id.* at 2198.

In evaluating whether a limitation on cross-examination was harmless error, courts consider: (1) the strength of the state's case; (2) the importance of the witness's testimony; (3) whether the excluded testimony would have been cumulative; (4) the presence of evidence that would have corroborated the testimony; and (5) the extent of the cross-examination that was permitted. *See Nappi*, 793 F.3d at 252 (citing *Van Arsdall*, 475 U.S. at 684; *Alvarez*, 763 F.3d at 233); *see also Brinson v. Walker*, 547 F.3d 387, 395 (2d Cir. 2008) (considering *Van Arsdall* factors in harmless error analysis on habeas review.) In addition, courts in this Circuit "consider a sixth factor in addition to the Supreme Court's five: "[W]hether the cross-examination of which the defendant was deprived was of a nature that was likely to affect the result.'" *Alvarez*, 763 F.3d at 234 (quoting *Brinson*, 547 F.3d at 396).

Applying these factors, the Court finds that there was no actual prejudice to McGhee by him being deprived of the opportunity to cross examine Detective Rivera about the false arrest lawsuits. The state's case against McGhee was strong. Four undercover detectives who purchased drugs from McGhee testified at trial. Collectively, those four undercover officers purchased crack cocaine from McGhee on six different occasions. The trial testimony showed that all the undercover detectives observed McGhee under good lighting conditions and from close proximity and all four identified him at trial. Unlike those witnesses, Detective Rivera was not personally involved in any of the drug sales and thus not a pivotal witness for the state.

18

Moreover, defense counsel cross-examined Detective Rivera as to other matters relating to his credibility, such as inconsistencies between his trial testimony and suppression hearing testimony regarding the time and place of McGhee's arrest, as well as an error on the search warrant paperwork as to the seller for certain drug sales for which McGhee was charged. (*See* Tr. at 59-71.) In light of the evidence presented, the Court finds that, even if defense counsel had been permitted to cross-examine Detective Rivera about the false arrest lawsuits, it is unlikely that it would have affected the outcome of the trial. *See Rosado*, 2012 WL 5871607, at *14 (denying habeas petition based on alleged confrontation clause violation when "little question" that had defense counsel been permitted to cross-examine witness about precluded topic, "her testimony would not have given rise to a reasonable doubt about [the petitioner's] guilt.").

For these reasons, I recommend that the Petition be denied as to Ground One.

## III.   McGhee's Claim Based On The Pretrial Photo Array Should Be Denied (Ground Two)

Next, McGhee claims that he is entitled to habeas relief because the state court unreasonably applied clearly established Supreme Court law when it found that the photo array from which UC 93 identified him prior to trial was not unduly suggestive. (*See* Pet. at 9-13.)

Under clearly established federal law, "convictions based on eyewitness identification at trial following a pretrial identification by photograph may be set aside 'if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *Davidson v. Capra*, No. 15-CV-09840 (LGS) (JLC), 2018 WL 1637967, at *16 (S.D.N.Y. Apr. 4, 2018) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1969)); *see also Concepcion v. Martuscello*, No. 16-CV-05918 (LAP) (GWG), 2017 WL 4536087, at *6 (S.D.N.Y. Oct. 11, 2017), *report and recommendation adopted*, 2018 WL 4283736 (S.D.N.Y.

Sept. 7, 2018). The Second Circuit employs a two-step test to evaluate whether an out-of-court identification procedure violates due process. *See Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). First, the court must determine "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator[.]" *Id.* "If the procedures were not suggestive, the identification evidence presents no due process obstacle to admissibility [and] no further inquiry by the court is required." *Id.* (internal citations omitted). However, if the court finds that the procedures were suggestive, "it must then determine whether the identification was nonetheless independently reliable." *Id.; see also Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) ("reliability is the linchpin in determining the admissibility of identification testimony").

On habeas review, a state court's determination of suggestiveness is entitled to "substantial deference." *Concepcion*, 2017 WL 4536087, at *7 (citing *Dunlap v. Burge*, 583 F.3d 160, 166 (2d Cir. 2009)). Here, the trial court found that the array photographs were similar in terms of facial shape, hair length and facial hair and while McGhee, unlike the fillers, was "not looking into the camera," the trial court judge concluded that the difference in appearance was not "that noticeable when you first look at the photo array." (Hr'g Tr. 30.) Accordingly, she found that, since the faces of the subjects were "similar in appearance," the photo array was "fairly constituted." (Hr'g Tr. 30.) The Appellate Division affirmed, finding that, "[t]he record supports the court's finding that the photo array was not unduly suggestive." *McGhee*, 125 A.D.3d at 538 (citing *People v. Chipp*, 75 N.Y.2d 327, 336 (1990)). The court further concluded that "[t]he difference between [McGhee]'s photo and the other photos was not sufficient to create a substantial likelihood that [McGhee] would be singled out for identification." *Id*. The Court of

20

Appeals affirmed the order of the Appellate Division, finding that there was "record support for the suppression court's determination of mixed law and fact that the photo array was not unduly suggestive and was fairly constituted." *People v. Smith*, 27 N.Y.3d 652, 670, 36 N.Y.S.3d 861, 873 (2016).

"[F]actual findings of the state court regarding the suggestiveness of the lineup must be presumed correct in the absence of clear and convincing evidence to the contrary." *Espiritu v. Haponik*, No. 05-CV-07057 (RJS), 2012 WL 161809 at \*6 (S.D.N.Y. Jan. 19, 2012); *see also Miller v. Napoli*, No. 08-CV-05286 (KMK) (LMS), 2011 WL 8997719, at \*5 (S.D.N.Y. Mar. 8, 2011) (court must presume that state court's finding that photos in array were "sufficiently similar in appearance" was correct), *report and recommendation adopted*, 2012 WL 4051964 (S.D.N.Y. Sept. 14, 2012). The issue for this Court on habeas review is whether the *Wade* decision by the state court was contrary to, or involved an unreasonable application of, clearly established federal law. *See Miller*, 2011 WL 8997719, at \*6.

Upon review, this Court cannot find that the trial court's determination was contrary to, or involved an unreasonable application of, clearly established federal law. While McGhee is the only person in the array looking away from the camera, the Court agrees with Respondent that it is not readily apparent that a condition in McGhee's eye was responsible for the direction of his gaze. (*See* Opp. at 30.) Because the state court found that the photographs were sufficiently similar, the state court's determination that this difference did not support a showing of suggestiveness was not unreasonable. *See Miller*, 2011 WL 8997719, at \*6 ("Minor differences, such as differing backgrounds and facial expressions, do not rise to the level of suggestiveness in a photo array.")

21

Moreover, even if the photo array had been unduly suggestive, as McGhee contends, to warrant relief McGhee also would have to show that the identification was not independently reliable. *See Raheem*, 257 F.3d at 133. In assessing the reliability of an identification, courts consider the following factors: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. *See Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200). "None of these factors standing alone is dispositive of the existence of independent reliability; instead, reliability is assessed in light of the totality of the circumstances." *Id*. (quotation omitted).

While UC 93 purchased drugs from McGhee on only one occasion, she testified that she was in arm's reach of him in a lighted area and could see his whole body with nothing blocking her view. (Tr. 418-21.) Further, UC 93 initially identified McGhee less than two months after he sold her the drugs, and UC 93 testified at trial that she was "[a] hundred percent positive" that McGhee was the man who sold her the drugs. (Tr. 423-24.) Thus, the Court finds that UC 93's identification of McGhee was independently reliable. *See Gilford v. Racette*, No. 13-CV-05881 (ALC) (AJP), 2015 WL 4639975, at *18 (S.D.N.Y. Aug. 5, 2015) (citing cases), *report and recommendation adopted*, 2015 WL 7430825 (S.D.N.Y. Nov. 20, 2015); *see also Warren v. Miller*, 78 F. Supp. 2d 120, 136 (E.D.N.Y. 2000) (undercover officers' identification independently reliable when officers, trained to pay specific attention to a suspect's characteristics, were within three feet of the suspect and had clear opportunity to view petitioner).

For these reasons, I recommend that the Petition be denied as to Ground Two.

22

## IV. McGhee's Claim That He Improperly Was Sentenced As A Second Felony Drug Offender Is Not Cognizable On Federal Habeas Review (Ground Three)

Finally, McGhee contends that he was "incorrectly sentenced as a second felony drug offender whose prior conviction was a violent felony because the offense he was previously convicted of—criminal possession of a weapon in the third degree—no longer qualifies as a violent felony offense. (Pet'r Br., ECF No. 20, at 13-14.)

"Sentencing claims are not reviewable by a federal habeas court if they are merely state law claims." *Scott v. Graham*, No. 16-CV-02372 (KPF) (JLC), 2018 WL 5257613, at *24 (S.D.N.Y. Oct. 22, 2018) (citing *Saracina v. Artus*, 452 F. App'x 44, 46 (2d Cir. 2011)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The question of whether a particular crime is a violent felony under state law is itself a question of state law and, thus, provides no basis for federal habeas corpus relief. *See, e.g.*, *Rodriguez v. Lee*, No. 10-CV-396 (VB), 2013 WL 6410766, at *2 (S.D.N.Y. Dec. 9, 2013) (finding non-cognizable claim that petitioner's "prior convictions did not constitute predicate felonies for purposes of adjudicating him a 'persistent violent felony offender'"); *Rodriguez v. Williamson*, No. 06-CV-14306 (NRB), 2007 WL 2274255, at *5 (S.D.N.Y. Aug. 8, 2007) (same).

To the extent that McGhee now claims that his right to due process was violated (*see* Reply Mem. at 13-14), he did not fairly present that issue to the state court on direct appeal. Thus, the claim is unexhausted. *See Ford v. Smith*, No. 12-CV-08993 (VB) (LMS), 2016 WL 7647042, at *7-8 (S.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*, 2017 WL 27982 (S.D.N.Y. Jan. 3, 2017); *see also Sweeper v. Graham*, No. 14-CV-06346 (CM), 2017 WL 4516645, at *1 (S.D.N.Y. Sept. 26, 2017) (discussing exhaustion under AEDPA, including requirement that

23

petitioner fairly presented to appropriate state court same federal constitutional claim brought in federal court). In any event, McGhee has not shown that he was sentenced based on materially false information; that he was deprived of notice or opportunity to contest the relevant facts; or that he was sentenced based on a material misapprehension of fact, as required to show a violation of his right to due process. *See Ford*, 2016 WL 7647042, at *8.

For these reasons, I recommend that the Petition be denied as to Ground Three.

## CONCLUSION

For the foregoing reasons, I recommend that McGhee's Petition for a Writ of Habeas Corpus be DENIED. The Clerk of Court is directed to mail a copy of this Report and Recommendation to the *pro se* Plaintiff.

DATED:     April 18, 2019
           New York, New York

Stewart d. aaron

**STEWART D. AARON**
**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party may respond to another party's objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

24

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an

extension of time for filing objections must be addressed to Judge McMahon.

**FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF**

**OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

25